United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY M. GAIRNESE, | ) Case No.: 09-CV-04839-LHK |
| Plaintiff, | ) ORDER DENYING PLAINTIFF'S |
| v. | ) MOTION FOR PARTIAL SUMMARY |
| | ) JUDGMENT |
| KING PHARMACEUTICALS, INC., | ) |
| | ) (re: docket #18) |
| Defendant. | ) |

Plaintiff Anthony M. Gairnese ("Plaintiff") brings suit against his former employer, Defendant King Pharmaceuticals, Inc. ("King" or "Defendant"), on the ground that he was discharged without cause within 12 months of his return to work from active military duty. Plaintiff claims that his termination was in violation of the notice and cause provisions of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.* In addition, Plaintiff claims that the alleged violation of USERRA constitutes wrongful termination in violation of public policy, a California common law claim. Plaintiff has moved for partial summary judgment as to Defendant's liability on both claims, leaving the determination of damages for trial. Defendant opposes the motion, arguing that Plaintiff was terminated with cause. Pursuant to Civil Local Rule 7-1(b), the Court finds this motion appropriate for determination without oral argument. For the reasons discussed below, Plaintiff's motion for partial summary judgment is DENIED.

1
Case No.: 09-CV-04839-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# I. BACKGROUND

In May 2004, Plaintiff began work as a pharmaceutical sales person for King in the Salinas and Monterey territory of California. Compl. ¶ 6; Answer ¶ 6. His job duties entailed calling health care providers to promote and increase the number of prescriptions written for King's products. Gairnese Dep. 76:6-12. At the time of his hiring and throughout his employment, Plaintiff was an active member of the U.S. Army Reserves. *Id*. at 53:4-54:19. At various points in his employment with King, Plaintiff took leaves of absence for reserve duty and was reinstated to his job with King each time. Pl.'s Mot. for Partial Sum. J. ("Pl.'s Motion") at 4. As relevant here, Plaintiff was called to active duty in Afghanistan in September 2006, and served as a "Pharmacy Tech" at the Bagram Air Base in Afghanistan for the U.S. military's Craig Joint Theater Hospital through mid-January 2008. Gairnese Dep. 56:14-23. During his term of duty in Afghanistan, King paid Plaintiff the difference between his salary and military pay, issued him incentive pay for sales within his territory, issued period pay increases, and gave benefits as if he were actively employed with King. *Id*. at 107:24-108:2. King, however, did not have an express policy on the "cause" (or "safe harbor") provisions in USERRA. Koch Dep. 39:7-10.

On February 11, 2008, Plaintiff was reinstated to his position with King and attended new product training in King's New Jersey facilities. *Id*. at 81:12-84:6. For the time between May and September 2008, Plaintiff met or exceeded company-set sales goals for the medications he was selling. Pl.'s Motion at 6. For example, in September 2008, Plaintiff was the top ranking sales representative in his district, meeting 105.7% of his goal for the medication Avinza, and 122.3% of his goal for the medication Skelaxin. *Id*. King submits that Plaintiff's sales results are not especially indicative of excellent performance because King's products attained an 84%-97% goal during Plaintiff's absence without anyone promoting King's products. Koch Decl. ¶ 12.

Upon his return, Plaintiff reported to District Manager Allison Koch. *Id*. at 80:18-24. Plaintiff's position required extensive travel throughout his assigned territory, most of which he did alone. His supervisor, Koch, accompanied him on field visits, or "ride alongs," in May, June, July, August, October, and November 2008. Koch Decl. ¶ 4. During these ride alongs, Koch observed and provided feedback on Plaintiff's sales technique and his compliance with company policies

1   and procedures. Gairnese Dep. 85:9-13. According to Ms. Koch, when she provided critical

2   feedback about his selling skills, Plaintiff reacted negatively, telling Ms. Koch that he didn't have

3   to listen her, he knew more than she did, and she was young enough to be his daughter (at the time,

4   Plaintiff was 47 years old, while Koch was 30 years old). Koch Decl. ¶ 6.

5         Ms. Koch documented four examples of what she calls Plaintiff's disregard of her

6   instructions. First, Plaintiff disregarded her instructions that "lunch and learn" meetings were only

7   supposed to be scheduled with "high decile doctors." Koch Decl. ¶ 7. A "lunch and learn" is a

8   meeting between a King sales representative and a doctor, in which the sales representative brings

9   lunch to a doctor's office and tries to sell King's products. According to Ms. Koch, King believes

10  that "high decile" doctors (i.e., those writing a large volume of prescriptions in the same drug class

11  as King's products) are the best prospects for "lunch and learns." *Id*. In February 2008, Ms. Koch

12  instructed Plaintiff to only schedule a "lunch and learn" with "high decile" doctors, but Plaintiff did

13  not follow this instruction and scheduled a "lunch and learn" with non-target doctors in both June

14  2008 and July 2008. In August 2008, Ms. Koch learned that Plaintiff had another non-target

15  "lunch and learn" planned and directed Plaintiff to cancel it, which he did. Plaintiff's

16  understanding was that some flexibility was always allowed in the "lunch and learn" budget,

17  permitting sales representatives to show initiative. Gairnese Dep. 134:25-135:13.

18        The second, third, and fourth examples cited by Ms. Koch relates to Plaintiff's failure to

19  timely complete a review of product promotions, to timely research and discuss prescription

20  opportunities with certain providers, and to timely review King's sample management policy.

21  Def.'s Opp'n at 6 (citing Koch Decl. ¶ 7). Plaintiff does not contest the occurrence of these events,

22  but rather notes that the tasks were completed once he properly understood Ms. Koch's

23  instructions. Pl.'s Motion at 8.

24        On October 3, 2008, Ms. Koch met with Plaintiff and issued a verbal warning. Pl.'s Motion

25  at 6; Def.'s Opp'n at 7. Ms. Koch's supervisor, Cristine DeBoer, attended by telephone. Ms. Koch

26  identified a four-part development plan to improve Plaintiff's selling skills, which involved: 1)

27  daily e-mails from Plaintiff describing his sales calls; 2) a Monday morning phone call with Ms.

28  Koch to role-play scenarios; 3) submission of voicemails to Ms. Koch upon Plaintiff's successes;

3

Case No.: 09-CV-04839-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

and 4) the review of sales training programs. Koch Dep. 140:1-142:7. According to Ms. Koch, Plaintiff responded negatively to the warning, asked if she was "trying to take [him] out," said he felt threatened, that Ms. Koch was a micromanager, and that he knew how to run his business better than she did. Koch Decl. ¶ 9. Ms. Koch informed King's Human Resources staff about Plaintiff's response, and Human Resources informed Ms. Koch that Plaintiff should be closely monitored for compliance with her verbal warning. Def.'s Opp'n at 8.

In November 2008, Ms. Koch went on another field visit with Plaintiff. According to Ms. Koch, Plaintiff did not show significant improvement in either accountability for his behavior or in his selling skills. Koch Decl. ¶ 7. Koch recommended Plaintiff's termination due to his lack of on-going accountability and resistance to her direction. According to Koch, Plaintiff did not timely comply with instructions to prepare a business plan, did not review training materials, and resisted efforts to improve his selling technique. Def.'s Opp'n at 8-9. Plaintiff also violated King's promotion guidelines by speaking of the "euphoric" effects of Oxycontin, a competitor to King's Avinza product. *Id*. Plaintiff does not contest the deficiencies cited by Ms. Koch, but instead notes that issues to be remedied were actually completed not long after the deadlines provided by Ms. Koch. Pl.'s Motion at 10-12. Plaintiff acknowledges using the word "euphoria" in a conversation with a doctor, but notes that this technical compliance violation only occurred one time. *Id*.

On December 3, 2008, Ms. Koch and another of King's district sales managers, Chris Moore, met with and informed Plaintiff of his termination. Gairnese Dep. 217:19-218:1. Prior to the meeting, Plaintiff concluded that the meeting was to terminate his employment. *Id*. at 218:22-219:25.

## II. LEGAL STANDARDS

Summary judgment may be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Material facts are those which may affect the outcome of the case and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In a motion for summary judgment, the Court draws all reasonable inferences that may be

4
Case No.: 09-CV-04839-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    taken from the underlying facts in the light most favorable to the nonmoving party. *Matsushita*

2    *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). On a motion for summary

3    judgment, "the district court does not assess credibility or weigh the evidence, but simply

4    determines whether there is a genuine factual issue for trial." *House v. Bell*, 574 U.S. 518, 559-560

5    (2006).

6        The moving party has the initial burden of production for showing the absence of any

7    material fact. *Celotex*, 477 U.S. at 331. The moving party can satisfy this burden in two ways.

8    "First the moving party may submit affirmative evidence that negates an essential element of the

9    nonmoving party's claim. Second, the moving party may demonstrate to the Court that the

10   nonmoving party's evidence is insufficient to establish an essential element of the nonmoving

11   party's claim." *Id*. Once the moving party has satisfied its initial burden of production, the burden

12   of proof shifts to the nonmovant to show that that there is a genuine issue of material fact. "When

13   a motion for summary judgment is properly made and supported, an opposing party may not rely

14   merely on allegations or denials in its own pleading." Fed. R. Civ. P 56(e)(2). The nonmovant

15   must go beyond its pleadings "by her own affidavits, or by the 'depositions, answers to

16   interrogatories, and admissions on file . . .'" *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

18       Along with his reply brief, Plaintiff filed objections to certain evidence submitted by

19   Defendant in its opposition to Plaintiff's motion for partial summary judgment. It is not necessary

20   to rule on those evidentiary objections at this point, however, because even without reliance on the

21   particular evidence to which Plaintiff objects, Plaintiff has not satisfied his burden of showing the

22   absence of a genuine issue of material fact. Indeed, the primary factual issues of notice and cause

23   are in genuine dispute.

24   **A. USERRA**

25       USERRA, 38 U.S.C. §§ 4301 *et* seq., prohibits discrimination against persons based on

26   service in the uniformed services. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

27   Plaintiff's first claim is for violation of USERRA's "cause" provision, which states: "A person who

28   is reemployed by an employer under this chapter shall not be discharged from such employment,

1   except for cause -- within one year after the date of such reemployment, if the person's period of

2   service before the reemployment was more than 180 days." 38 U.S.C. § 4316(c)(1).  USERRA

3   does not define "cause," but the relevant Department of Labor regulation provides: "In a discharge

4   action based on conduct, the employer bears the burden of proving that it is reasonable to discharge

5   the employee for the conduct in question, and that he or she had notice, which was express or can

6   be fairly implied, that the conduct would constitute cause for discharge." 20 C.F.R. § 1002.248.

7   　　　　Defendant does not dispute Plaintiff's eligibility for coverage under Section 4316(c) of

8   USERRA based on Plaintiff's service in Afghanistan, which was greater than 180 days. Thus,

9   Plaintiff's December 3, 2008 termination, which was within one year of the date of his

10  reemployment with King on February 11, 2008, is subject to USERRA's "cause" provision.

11  Although King, as the employer, has the ultimate burden of proof at trial as to reasonable discharge

12  and notice, it is Plaintiff's motion for partial summary judgment that is under review, and thus it is

13  Plaintiff's burden to show that there is no genuine issue of material fact in dispute. Plaintiff has

14  failed to satisfy that burden. Moreover, Defendant has set forth ample facts showing that there are

15  genuine issues for trial, namely issues of reasonable cause for discharge and sufficient notice.

16  　　　　Plaintiff's own briefing is replete with references to Plaintiff's "misunderstanding" of

17  instructions, failure to complete assigned tasks within given deadlines, "minor offenses,"

18  "complete non-issues," and "one-time" events of little significance. *See* Pl.'s Motion at 5-12, 16-

19  21. And Defendant points to Plaintiff's negative attitude and behavior toward his supervisor, Ms.

20  Koch, as additional grounds for discharge. *See* Def.'s Opp'n at 13. True, Plaintiff met or exceeded

21  company-set sales goals. But, on this record, it cannot be said that King's decision to terminate

22  Plaintiff was not objectively reasonable. *See, e.g.*, *Francis v. Booz, Allen & Hamilton, Inc.*, 452

23  F.3d 299, 308 (4th Cir. 2006) (finding summary judgment for defendant employer appropriate

24  where evidence showed employee's unprofessional conduct, negative attitude, and inappropriate

25  conduct toward co-workers and customers).

26  　　　　In addition to the genuine dispute over cause, there is also dispute as to the sufficiency of

27  the October 3, 2008 verbal warning by Ms. Koch to Plaintiff as notice that his conduct was cause

28  for discharge. Plaintiff, as he does throughout his brief, argues that the items listed in the warning

6

had been "remedied or was a one-time event." Pl.'s Motion at 18. Defendant, unsurprisingly, relies on the October 3, 2008 as notice for the eventual December 3, 2008 discharge. Summary judgment is improper if there are "*any* genuine issues of material fact." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 2010 U.S. App. LEXIS 17269 (9th Cir. Aug. 19, 2010) (emphasis added). In this case, the substantial dispute over material facts as to cause and notice preclude summary judgment on Plaintiff's USERRA claim.

### B. Wrongful Termination in Violation of California Public Policy

Wrongful termination in violation of public policy is a California common law cause of action providing that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980); *see also Freund v. Nycomed Amersham,* 347 F.3d 752, 758 (9th Cir. 2003). The public policy implicated must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund,* 347 F.3d at 758 (quoting *City of Moorpark v. Superior Court,* 18 Cal. 4th 1143, 1159, 77 Cal. Rptr. 2d 445, 959 P.2d 752 (1998)). Plaintiff argues that a violation of USERRA, in this case an alleged violation of the notice and cause requirements, should form the basis for a claim of wrongful termination in violation of public policy. Plaintiff concedes, however, that his second claim for wrongful termination in violation of California public policy is derivative of his first claim under USERRA. Pl.'s Motion at 23. As the Court is denying Plaintiff's motion for partial summary judgment on the USERRA claim, summary judgment as to Plaintiff's second claim must also be denied.

### IV. CONCLUSION

Accordingly, Plaintiff's motion for partial summary judgment is DENIED. The motion hearing currently set for September 28, 2010 is VACATED. The Case Management Conference remains as set on calendar for September 28, 2010 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: September 27, 2010

_____
LUCY H. KOH
United States District Judge

8

Case No.: 09-CV-04839-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT